Douglas W. Robinson (SBN: 255909)
dwrobinson@shb.com
Tony M. Diab (SBN: 277343)
tdiab@shb.com
Jamie H. Kitano (SBN: 268078)
jkitano@shb.com
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614-2546
Telephone:  949.475.1500
Facsimile:   949.475.0016

Peter Strand (*pro hac vice*)
pstrand@shb.com
Angel D. Mitchell (*pro hac vice*)
amitchell@shb.com
Chris Dove (*pro hac vice*)
cdove@shb.com
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone:  816.474.6550
Facsimile:   816.421.5547

Attorneys for Defendants

ALSTOM, S.A., ALSTOM GRID, INC., PSYMETRIX LTD. AND ALSTOM LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRIC POWER GROUP, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ALSTOM, S.A., et al., <br><br> Defendants | Case No: CV12-6365-JGB (RZx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ALSTOM S.A., ALSTOM GRID INC., ALSTOM LIMITED AND PSYMETRIX LIMITED'S MOTION TO EXTEND CERTAIN CASE MANAGEMENT DEADLINES AND LIMIT THE NUMBER OF ASSERTED PATENT CLAIMS** <br><br> Hearing Date:  August 18, 2014 <br> Time:  9:00 a.m. <br><br> **Hon. Jesus G. Bernal** |

Defendants ALSTOM S.A., ALSTOM Grid Inc., ALSTOM Limited and Psymetrix Limited (collectively "Alstom") respectfully move the Court for an approximately two-month extension of certain case management deadlines. This aspect of the relief sought is largely agreed to by Plaintiff Electric Power Group, LLC ("EPG"). But Alstom also moves the Court to narrow EPG's number of asserted patent claims asserted from the current number of 82 claims to no more than 5 claims per patent and to require EPG to serve its list of asserted claims on or before August 22, 2014. Such a reduction will benefit all involved by reducing the burden on both the parties and the Court by streamlining remaining expert discovery, reducing the burdens involved with summary judgment and other pretrial motion practice, and proceeding to efficiently prepare this case for trial. Given the upcoming deadlines relating to motions and an impending trial date, Alstom respectfully submits that now is the most appropriate time to reduce the number of claims to reduce the overall complexity of the case, simplify the issues, and make the most efficient use of the Court's and the parties' resources. Simply put, the relief Alstom seeks will further the just, speedy, and inexpensive determination of this action.

## I.     BACKGROUND

On July 25, 2012, EPG filed a complaint for patent infringement against Defendants asserting that Alstom infringes U.S. Patent No. 8,060,259 (the "'259 Patent"). [ECF Doc. No. 1.] On February 19, 2013, EPG filed an amended complaint adding U.S. Patent No. 7,233,843 (the "'843 Patent"). [ECF Doc. No. 26.] On July 21, 2013, EPG filed a second amended complaint adding U.S. Patent No. 8,401,710 (the "'710 Patent"). [ECF Doc. No. 48.] Finally, on April 14, 2014, EPG filed the operative third amended complaint reiterating its infringement claims based on the '259, '843, and '710 patents (collectively the "Asserted Patents"), and adding Alstom Limited as an additional defendant as well as adding claims of induced and contributory infringement. [ECF Doc. No. 76.] EPG asserts 82 patent

claims across the three different Asserted Patents. Specifically, EPG asserts claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, 16, 17, 18, 19, 20, 22, and 23 of the '843 patent; claims 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 51, and 53 of the '259 patent; and claims 1, 2, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 22 of the '710 patent.

The asserted claims are laden with redundancy and are unwieldy in their scope. For example, claim 1 of the '843 patent claims a "display computer having a monitor for displaying a visualization of the metrics being monitored." [*See* Declaration of Tony M. Diab ("Diab Decl.") ¶ 2, Ex. A, '843 Patent, col. 28:65–29:20.] But then the patent adds several redundant dependent claims relating to visualization, such as:

- "wherein the monitor displays a visualization of data representing said at least one of historical tracking, prediction or actions related to the metrics being monitored" (claim 7),

- "wherein the monitor concurrently displays at least one dynamic geographic display and a plurality of data or text panels for at least one of monitoring, tracking, prediction, actions or mitigations" (claim 9),

- "wherein a display format of the visualization on the monitor can be customized by the operator" (claim 13), and

- "wherein the operator of said at least one display computer can interactively collect historical data and view a visualization of the historical data in tabular, graphics or a customized format" (claim 17).

Also, claim 1 of the '259 patent includes numerous limitations for receiving, processing, and displaying "metrics" from the power grid. [*Id.* ¶ 2, Ex. B, '259 Patent, col. 28:13-56.] But then dependent claim 2 adds duplicative limitations such as "wherein the monitor computer analyzes the monitored metrics and the graphical user interface displays results of analyzing the metrics." [*Id.* at col. 28:57-60.] Further, dependent claims 12, 13, and 14 all claim various alarming functionality:

3

- "wherein the monitor computer activates an alarm when a performance abnormality is detected" (claim 12),

- "wherein the monitor computer includes means for notifying personnel when one or more of the metrics crosses a threshold" (claim 13), and

- "wherein the notifying of personnel occurs by e-mail, text, message, pager, audible alarms, or visual displays" (claim 14).

The burden on the parties and the Court that results from EPG asserting duplicative claims is exacerbated by the fact that the dependent claims in the '259 and '710 patents include numerous limitations within a single claim. For example, claim 1 of the '710 patent, on its own, spans an entire column of the patent and includes the following 11 limitations:

> A wide-area real-time performance monitoring system for monitoring events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid, the system comprising:
> a monitor computer including an interface for receiving a plurality of data streams, each of the data streams comprising sub-second, time stamped synchronized phasor measurements wherein the measurements in each stream are collected in real time at geographically distinct points over the wide area of the interconnected electric power grid, the wide area comprising at least two elements from among control areas, transmission companies, utilities, regional reliability coordinators, and reliability jurisdictions;
> a plurality of interfaces to other power system data sources, the other power system data sources comprising at least one of transmission maps, power plant locations, EMS/SCADA systems; and
> a plurality of interfaces to non-grid data sources,
> wherein the monitor computer is configured to monitor metrics, the metrics comprising at least one of reliability metrics, power grid operations metrics, generation metrics, transmission metrics, suppliers metrics, grid infrastructure security metrics, and market metrics over the wide area of the interconnected electric power grid,
> wherein the monitor computer is configured to detect the events in real-time from the plurality of data streams from the wide area,
> wherein the monitor computer is configured to execute event detection logic, the event detection logic being configured to detect and analyze an event based on at least

4

>   one of limits, sensitivities and rates of change for one or more measurements from the data streams and dynamic stability metrics derived from analysis of the measurements from the data streams including at least one of frequency instability, voltages, power flows, phase angles, damping, and oscillation modes, derived from the phasor measurements and the other power system data sources in which the metrics are indicative of events, grid stress, and/or grid instability, over the wide area,
>   wherein the monitor computer is configured to automatically present event analysis results and diagnoses of events via a graphical user interface coupled to the monitor computer for concurrently displaying the event analysis results and diagnoses of events and associated metrics from different categories of data and the derived metrics in visuals, tables, charts, or combinations thereof,
>   wherein the data comprises at least one of monitoring data, tracking data, historical data, prediction data, and summary data,
>   wherein the graphical user interface is configured to display concurrent visualization of the measurements from the data streams and the dynamic stability metrics directed to the wide area of the interconnected electric power grid,
>   wherein the monitor computer is configured to accumulate and to update the measurements from the data streams, the dynamic stability metrics, grid data, and non-grid data in real time as to wide area and local area portions of the interconnected electric power grid, and
>   wherein the monitor computer is configured to derive a composite indicator of reliability that is an indicator of power grid vulnerability and is derived from a combination of one or more real time measurements or computations of measurements from the data streams and the dynamic stability metrics covering the wide area as well as non-power grid data received from the non-grid data source.

[*Id.* ¶ 2, Ex. C, '710 Patent, col. 28:19-29:21.]

On April 21, 2014, the parties served initial expert disclosures before a single deposition had been taken in the case. EPG's initial expert report regarding infringement was 398 pages long and Alstom's initial expert report regarding invalidity was 534 pages long. [*Id.* ¶ 3.] On May 16, 2014, the parties served rebuttal expert disclosures. EPG's rebuttal expert report was 295 pages long and Alstom's rebuttal expert report was 80 pages long. [*Id.*] Thus, the parties have already served expert reports totaling 1,307 pages in length.

Since service of initial expert reports, EPG has taken numerous depositions of Defendants' employees who have testified at length regarding the capabilities of the accused software—e-terra*vision* and PhasorPoint—as well as other issues in the case. Moreover, EPG's claims of induced and contributory infringement rest on allegations that Alstom's customers implement systems and methods that directly infringe EPG's patents and that Alstom's sales of the accused software allegedly "induce" or "contribute" to those customers' infringement. EPG has had ample opportunity to seek discovery regarding those underlying customer implementations. Indeed, EPG served subpoenas seeking depositions from customers months ago, including subpoenas to ISO New England, Inc., Midwestern ISO ("MISO"), and Western Electricity Coordinating Council ("WECC") in February and March of 2014. [*Id.* ¶ 4, Exs. D, E & F.] EPG took the deposition of MISO's Rule 30(b)(6) designee on May 28, 2014. [*Id.* ¶ 5, Ex. G.] And Alstom even agreed to grant EPG an extension to July 31, 2014, to take the depositions of ISO New England and WECC. [ECF Doc. No. 107, ¶ 3.] All remaining depositions are scheduled to be complete by August 15, 2014. Alstom therefore proposes to extend the deadline for completing the remaining fact depositions to August 15, 2014, whereas EPG seeks to extend that deadline to August 29, 2014.[1] EPG has therefore had ample opportunity to conduct discovery in this action.

The parties have agreed that supplementation of expert reports is inevitable in light of the extensive discovery that has occurred since service of expert reports in May

---

[1] The parties have agreed that the following depositions can be taken after the current deadline of July 31, 2014: EPG's Jim Dyer on August 6, 2014, and Alstom Grid's Manu Parashar on August 8, 2014, and Frank Tyson on August 13, 2014. EPG has purported to serve additional subpoenas on non-party customers and other deposition notices after the April 15, 2014, deadline for noticing depositions. [ECF Doc. No. 75 ("The Scheduling Order . . . is modified to extend the deadline for completing fact depositions in this matter to May 30, 2014, **for any deposition notices prior to April 15, 2014**.").] It is Alstom's position that all subpoenas and deposition notices served after that date are invalid as untimely and impermissible. Alstom has, however, agreed to allow EPG to proceed with selected (but not all) depositions noticed after that deadline. Alstom remains willing to consider requests for other depositions on a case-by-case basis.

MEMO. OF POINTS AND AUTH. IN SUPPORT OF ALSTOM'S MOTION TO EXTEND CERTAIN CASE MANAGEMENT DEADLINES AND LIMIT NUMBER OF ASSERTED CLAIMS

and April of 2014. They have therefore agreed to serve supplementations of initial expert disclosures pursuant to FED. R. CIV. P. 26(e) on or before September 12, 2014, and rebuttal expert disclosures on or before October 3, 2014. [Diab Decl. ¶ 6, Ex. H.] Alstom proposes that expert depositions be complete by October 17, 2014, whereas EPG proposes that they be complete by October 24, 2014. [*Id.*] The parties further agree that the Motion Hearing Deadline should be continued from October 6, 2014, to December 8, 2014, with a filing deadline on or before November 3, 2014, oppositions filed on or before November 17, 2014, and replies filed on or before November 24, 2014. [*Id.*] In addition, they agree that the Final Pretrial Conference should be continued from 11:00 a.m. on November 17, 2014, to January 20, 2015. [*Id.*] And the Jury Trial should be continued from 9:00 a.m. on December 15, 2014, to February 17, 2015. [*Id.*]

Alstom further contends that EPG should be required to reduce its number of asserted claims from 82 to no more than 5 claims per patent for each of the 3 Asserted Patents and to serve an election of those asserted claims on or before August 22, 2014—3 weeks in advance of the parties' proposed deadline for supplementations of initial expert reports. Even EPG is forced to recognize that its current claim set is unmanageable. EPG has agreed to narrow the number of disputed claims to no more than 32 within 40 days after the close of fact discovery, and to further narrow its claims to no more than 16 within 7 weeks before trial. But EPG's proposal is too little, too late to further the just, speedy, and inexpensive determination of this action.

7

The parties' only points of disagreement are therefore highlighted below:

| Event | Current Deadline | Alstom's Proposed Deadline | EPG's Proposed Deadline |
|---|---|---|---|
| Complete remaining fact depositions | 7/31/2014 | 8/15/2014 | |
| EPG serve election of asserted claims (5/patent for 15 total claims) | None | 8/22/2014 | |
| Complete remaining fact depositions | 7/31/2014 | | 8/29/2014 |
| Supplement initial expert reports | None | 9/12/2014 (agreed) | |
| Supplement rebuttal expert reports | None | 10/3/2014 (agreed) | |
| EPG serve first election of asserted claims (32 claims) | None | | 10/8/2014 |
| Complete expert depositions | None | 10/17/2014 | 10/24/2014 |
| Motions filing deadline | 8/29/2014 | 11/3/2014 (agreed) | |
| Motions opposition deadline | 9/15/2014 | 11/17/2014 (agreed) | |
| Motions reply deadline | 9/22/2014 | 11/24/2014 (agreed) | |
| Motions hearing date | 10/6/2014 | 12/8/2014 (agreed) | |
| EPG serve election of asserted claims (16 claims) | None | | 12/30/2014 |
| Final pretrial conference | 11/17/2014 | 1/20/2015 (agreed) | |
| Trial date | 12/15/2014 | 2/17/2015 (agreed) | |

MEMO. OF POINTS AND AUTH. IN SUPPORT OF ALSTOM'S MOTION TO EXTEND CERTAIN CASE MANAGEMENT DEADLINES AND LIMIT NUMBER OF ASSERTED CLAIMS

## II. LAW & ARGUMENT

### A. The Court Should Adopt Alstom's Proposed Deadlines for Completing Fact and Expert Depositions.

Aside from the logistics associated with a reduction in claim terms, the parties disagree about the appropriate deadlines to complete fact and expert discovery. Alstom respectfully submits that August 15, 2014, provides an adequate extension of the deadline to complete remaining fact depositions. Depositions need to be complete sufficiently in advance of supplementations of expert reports, and Alstom's proposed deadline provides 4 weeks after completing fact depositions before initial expert report supplementations are due. EPG's proposed deadline would provide only 2 weeks, which would barely provide enough time to obtain deposition transcripts, let alone to review those transcripts and incorporate them into any supplemental expert reports. No other depositions are scheduled after Mr. Tyson's deposition on August 13, 2014, and there is adequate time remaining between now and August 15, 2014, to wrap up any other remaining fact depositions. Accordingly, no good cause exists for a further extension of the deadline to complete remaining fact depositions.

Alstom further respectfully submits that October 17, 2014, provides adequate time to complete expert depositions. EPG's proposed deadline of October 24, 2014, provides barely more than a week after expert depositions before the motions cutoff deadline. This does not provide adequate time to prepare to meet and confer prior to filing dispositive motions, let alone obtain, review, and incorporate testimony from deposition transcripts into any such motions just over a week later. Alstom respectfully submits that at least a two-week window between completion of expert depositions and the motions cutoff deadline is necessary.

### B. EPG Should Be Required to Elect Its Claims by August 22, 2014.

In addition to the above, Alstom respectfully submits that EPG should be required to reduce its number of asserted claims from 82 to no more than 5 claims per patent for each of the 3 Asserted Patents and to serve an election of those asserted

9

claims on or before August 22, 2014—3 weeks in advance of the parties' proposed deadline for supplementations of initial expert reports. The Federal Circuit has approved the practice of reducing the number of asserted claims, recognizing that "[i]n complex cases . . . the district court 'needs to have broad discretion to administer the proceeding'" and that such reductions do not violate due process rights. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311-12 (Fed. Cir. 2011) (holding that district court did not offend due process rights when it limited the number of asserted claims prior to claim construction).

Limiting the number of asserted claims is common practice in patent litigation to make such cases manageable, particularly at the procedural juncture quickly approaching here. For example, in *In re Katz Interactive Call Processing Patent Litigation*, the Federal Circuit affirmed a district court that had ordered the plaintiff to reduce the number of asserted claims to 16 following discovery. Similarly, in *Stamps.com, Inc. v. Endicia, Inc.*, the Federal Circuit affirmed a district court that had limited the number of asserted claims to 15 across 8 patents prior to expert discovery and summary judgment briefing, and later refused to expand that number. 437 Fed. Appx. 897, 902-03 (Fed. Cir. 2011). In *Visto Corp. v. Little Red Wagon Techs., Inc.*, 2012 WL 7989618 (N.D. Tex. Oct. 18, 2012), the court ordered the plaintiff to reduce the number of asserted claims from 35 to 10 before engaging in claim construction. In *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-0038 JJF, 2005 WL 2304190, at *3 (D. Del. Sept. 20, 2005), the district court found 90 asserted claims to be unreasonable and arbitrary, and ordered the plaintiff to reduce the number of asserted claims to 10 before fact discovery was even complete. And, in *Hearing Components, Inc. v. Shure, Inc.*, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008), the district court ordered the plaintiff to elect no more than 3 asserted claims from each of the 3 asserted patents.

The Court's reasoning in *Network Protection Sciences, LLC v. Fortinet, Inc.*, 2013 WL 1949051, at *2 (N.D. Cal. May 9, 2013), is persuasive here. There, the court found the plaintiff acted unreasonably in imposing a "bone-crushing burden" and the associated costs on the defendant by asserting more than 50 patent claims. The court found that the plaintiff should have been more selective in choosing which claims to assert, and that even 15 claims were too many to be tried. *Id.* (expressing concern that "both sides have an impractical view [about] trying this case to a jury"). Here, the 82 claims EPG asserts impose an even greater "bone-crushing burden" on Alstom as the parties prepare to supplement expert discovery and prepare summary judgment briefing, all of which promises to be unnecessarily voluminous and burdensome. Moreover, EPG's proposed two-step reduction in asserted claims from 32 following supplementation of expert reports to 16 after burdening the Court with summary judgment briefing is unjustified. Even EPG seems to realize that it cannot feasibly try more than 16 claims. Consequently, in an effort to reduce the overall complexity of this case, and to streamline the case and its attendant burdens as the parties complete expert discovery, engage in dispositive motion practice, and prepare for trial, EPG should be required to elect no more than 5 claims per each of the 3 Asserted Patents, for a total of no more than 15 claims.

The need for a reduction in claims at this procedural juncture is manifest. EPG's own acknowledgment that it needs to reduce its claims prior to trial speaks volumes. There simply is no reason why EPG cannot more meaningfully reduce the number of its asserted claims at this time. This case has been pending for more than 2 years. The parties have already exchanged expert reports regarding infringement and invalidity. Alstom has responded to EPG's discovery requests regarding the capabilities of the accused software and EPG has sought discovery from customers regarding the manner in which they are using that software. All remaining depositions are set to be complete by August 15, 2014. Alstom therefore respectfully submits that

it should be relieved of the "bone-crushing burden" associated with defending against EPG's continued maintenance of 82 voluminous, redundant claims before the next round of expert discovery, before the Court is burdened with unmanageable summary judgment motions, and before trial.

## III. CONCLUSION

EPG should have voluntarily reduced the number of its asserted claims long ago. Alstom repeatedly requested that EPG do so on its own initiative without needing to bother the Court with the present motion. Even EPG recognizes that its claims are unmanageable and need to be reduced—but EPG seeks to place the burden of reducing those claims on Alstom and the Court through more voluminous expert discovery and dispositive motion practice. This Court should act now to require EPG to make this case more manageable, therefore ameliorating the inevitable burden that will be placed on Alstom and the Court to reduce the overall complexity of this case and streamline it for trial. Alstom therefore respectfully submits that the Court should order EPG to reduce the number of its asserted claims to no more than 5 claims per Asserted Patent and serve its list of asserted claims on or before August 22, 2014.

Dated: July 21, 2014  SHOOK HARDY & BACON L.L.P.

By: _____*/s/ Tony Diab*_____
Tony M. Diab
Attorneys for Defendants ALSTOM S.A., ALSTOM Grid, ALSTOM Limited and Psymetrix Limited